UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

RICARDO DODSON,

      Plaintiff,

vs.

DAVID BERENSON, ET AL.,

      Defendant.

------------------------------------------------------

CASE NO. 1:17-CV-327

OPINION & ORDER
[Resolving Doc. No. 17]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Ricardo Dodson, proceeding *pro se*, brings a 42 U.S.C. § 1983 claim for violations of his First, Sixth, and Fourteenth Amendment rights.[1] Defendants David Berenson and Jennifer Whitten move the Court to dismiss Plaintiff Dodson's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

### I. Background

Defendants removed Plaintiff from a sex offender treatment program at the Grafton Correctional Institution.[3] Plaintiff alleges that Defendants Whitten and Berenson removed him from this program without due process and because of his race.[4]

---

[1] Doc. 4-2 (corrected complaint).
[2] Doc. 17. Plaintiff opposes. Doc. 29. Defendants reply. Doc. 34. Plaintiff sur-replies. Doc. 38.
[3] Doc. 4-2 at 3. Plaintiff is currently incarcerated at the Richland Correctional Institution. *Id.*
[4] In deciding a motion to dismiss for failure to state a claim, the Court takes the facts alleged in Plaintiff's complaint as true, and the Court presents Plaintiff's version of those facts here. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

During his incarceration at Grafton, Plaintiff was enrolled in the Comprehensive Sex Offender Program ("CSOP").[5] Plaintiff joined this program in 2015 at the recommendation of the parole board.[6]

During check-in for one of the program's group sessions, Plaintiff began to discuss an earlier conversation that he had.[7] Plaintiff stated that "Ms. L," a prison food service employee, told Plaintiff that she knew that he was convicted of rape.[8] She then told him that she was a sexual abuse and rape survivor herself.[9]

At this point, Defendant Whitten, who ran the group session, cut Plaintiff off and ordered him to leave the group. During the same class, Defendant Whitten also removed a white inmate from the group after he made comments about how a female parole board member would allegedly expose her genitals to inmates before parole board hearings in an attempt "to mentally torture them."[10]

A few days later, Plaintiff was fired from his job in food service because of his actions in the CSOP group.[11] After this, Defendants Whitten and Berenson informed Plaintiff that they were terminating his participation in CSOP.[12]

Before this conversation with Defendants, Plaintiff had learned that the white inmate removed from the class would be given a verbal reprimand and allowed to continue treatment.

---

[5] Doc. 4-2 at 5.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Doc. 1-3 at 6.
[11] *Id.*
[12] *Id.* at 7.

Defendants informed Plaintiff Dodson that the reason for these differing outcomes was that the other inmate's participation in CSOP was mandatory, while Dodson's participation was not.[13]

Plaintiff brings a claim under 42 U.S.C. § 1983, arguing that Defendants violated his First, Sixth, and Fourteenth Amendment rights.

## II. Legal Standard

A complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief can be granted. To survive a dismissal, a complaint "must present 'enough facts to state a claim to relief that is plausible on its face'" when its factual allegations are presumed true and all reasonable inferences are drawn in favor of the non-moving party.[14]

Although pleadings and documents filed by *pro se* litigants are "liberally construed" and held to a less stringent standards than formal pleadings drafted by lawyers,[15] *pro se* plaintiffs must still meet basic pleading requirements.[16] Courts are not required to conjure allegations on their behalf.[17]

## III. Discussion

To make a claim under 42 U.S.C. § 1983, a plaintiff must show a deprivation of his constitutional rights committed under color of state law.[18] Plaintiff Dodson alleges violations of his rights to freedom of speech, due process, and equal protection of the laws in violation of the

---

[13] *Id.*
[14] *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).
[15] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[16] *See Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001).
[17] *Id.*
[18] *Barkovic v. Hogan*, 505 F. App'x. 496, 499 (6th Cir. 2012).

Case No. 1:17-CV-327
Gwin, J.

First and Fourteenth Amendments.[19] The Court holds that Plaintiff has only stated a plausible claim for a violation of his equal protection rights, and therefore dismisses his other claims.

*A. Due Process Claims and Constitutionality of ODRC Policy 67-MNH-12*

Plaintiff Dodson alleges violations of both his procedural and substantive due process rights. Plaintiff Dodson also argues that Ohio Department of Rehabilitation and Corrections ("ODRC") Policy 67-MNH-12 is unconstitutional because it lacks sufficient procedural due process protections.

In order to state a claim for Fourteenth Amendment denial of procedural due process, Plaintiff must identify some liberty interest established either by the Constitution or by a statute or regulation that a state actor has denied.[20] If Plaintiff identifies a sufficient liberty interest, the Court determines whether he was given sufficient process in the denial of that interest.[21]

Ultimately, Plaintiff's allegations about both his removal from CSOP and the unconstitutionality of ODRC Policy 67-MNH-12 fail because prisoners do not have a constitutional right to prison programming,[22] prison employment,[23] or parole,[24] and so a denial of any of these cannot implicate the Due Process Clause. The statutes and policy cited by Plaintiff Dodson also do not create a liberty interest in receiving CSOP treatment.[25]

---

[19] Plaintiff also alleges violations of his Sixth Amendment rights, but puts forward no facts that could relate to a Sixth Amendment violation. Because he has clearly failed to state a claim relating to his Sixth Amendment rights, the Court dismisses that claim. *See* Fed. R. Civ. P. 12(b)(6); *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434.
[20] *See Trawick v. Kelly*, 2012 WL 5400007, at *3 (N.D. Ohio Nov. 5, 2012) ("The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest.").
[21] *Id.* (citing *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005)).
[22] *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 96 (1976); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003).
[23] *Argue*, 80 F. App'x. at 429.
[24] *See Jago v. Van Curen,* 454 U.S. 14, 20-21 (1981).
[25] The two statutes cited by Plaintiff Dodson, Ohio Revised Code §§ 5145.04 and 5145.05 primarily deal with recordkeeping within the Ohio prison system, and are therefore unrelated to his constitutional claims.

-4-

Case No. 1:17-CV-327
Gwin, J.

Plaintiff argues that because ODRC Policy 67-MNH-12 states that "[t]he Comprehensive Sex Offender Program shall be mandatory," he has a liberty interest in receiving treatment within that program. Plaintiff misunderstands the law on this issue.

The courts have moved away from a language-driven analysis of when a state regulation establishes a liberty interest. Instead, the Supreme Court has stated that in the context of prisons, liberty interests created by a state regulation "will be generally limited to freedom from restraint [that] . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[26] 67-MNH-12 does not involve restraint at all, and so does not fall within this liberty-interest-creating category of regulation.

Similarly, Plaintiff does not identify a substantive due process violation. He does not identify either a fundamental right or the kind of egregious government action that "shocks the conscience" required to sustain a substantive due process violation.[27] As such, he fails to state a substantive due process claim.

Plaintiff has failed to state a due process claim because he has not identified any constitutionally protected liberty interest that Defendants denied to him.

*B. First Amendment Retaliation Claims*

Throughout his complaint, Plaintiff Dodson alleges that Defendants retaliated against him for "reporting" misconduct by a prison employee, which he argues is protected First Amendment speech.[28]

---

[26] *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).
[27] *See Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003) ("Interests protected by substantive due process, which the legislature may *not* infringe unless supported by sufficiently important state interests, include those protected by specific constitutional guarantees, such as the Equal Protection Clause, freedom from government actions that 'shock the conscience,' and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." (internal citation omitted)).
[28] *See* Doc. 4-2 at 5-7.

-5-

Case No. 1:17-CV-327
Gwin, J.

Even construing Plaintiff's statements in the light most favorable to him, Plaintiff did not simply "report" employee misconduct. Plaintiff did not report employee misconduct through any traditional channel provided by the prison administration. Indeed, by his own admission, Plaintiff did not even solely intend to report employee misconduct.[29]

Instead, Plaintiff informed a group of sex offenders, all of whom possessed sufficient risk of reoffending that the State of Ohio had placed them in the CSOP,[30] that a prison employee these offenders could come into contact with was previously raped. Plaintiff admits that these statements were inappropriate in this group treatment setting.[31] Plaintiff's statements were not protected First Amendment conduct.[32]

Because Plaintiff's speech was not protected conduct, he cannot state a claim for retaliation.

*C. Equal Protection Claims*

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to equal protection of the laws. Specifically, Plaintiff alleges that Defendants removed him from the CSOP because of his race.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."[33] In order to state an equal protection claim, a plaintiff must first allege disparate treatment, meaning that he was treated

---

[29] *See* Doc. 4-2 at 6 ("Plaintiff also complained about how the staff member . . . made him feel very uncomfortable.").
[30] *See* 67-MNH-12(C) (describing CSOP as a program for sex offenders with a medium high or high risk of reoffending).
[31] *See* Doc. 4-1 at 6 (Plaintiff admits that he used the "wrong avenue" to make these statements.)
[32] *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (reaffirming that speech that violates a prison regulation, including a prohibition on "insolent" behavior, is not protected conduct).
[33] *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011).

differently from someone similarly situated to himself.[34] Then, he must allege discriminatory intent, meaning that the Defendants' made their decision at least in part because they sought to discriminate based on a protected characteristic.[35]

### *1. Similarly Situated Analysis*

Plaintiff alleges sufficient facts to satisfy both requirements. Plaintiff, an African American, identifies as similarly situated a white inmate in the CSOP. This white inmate was also disciplined by Defendants because of remarks he made during one of the program's sessions. While Plaintiff was removed from the program entirely, the white inmate was given a verbal reprimand and allowed to return to the program. Plaintiff argues that he received a harsher punishment because of his race.

Defendants argue that the differing substance of the two men's remarks, as well as the alleged fact that the white inmate's participation in the CSOP was mandatory while Plaintiff's participation was not, sufficiently differentiates the two men. There are two issues with these arguments, however.

First, Plaintiff alleges that both he and the white inmate came into the CSOP through the parole board's referral, and that there is no difference in the mandatory nature of the program for either man.[36] Defendants have provided no documentation or citation to precedent to rebut this allegation.

The language in ODRC policy 67-MNH-12(C)(1)(b)[37] does not obviously support the distinction between mandatory and permissive participation that Defendants attempt to draw. 67-

---

[34] *See Kennedy v. Tallio*, 20 F. Appx. 269, 471 (6th Cir. 2001).
[35] *Id.*
[36] *See* Doc. 4-2 at 16.
[37] Specifically, 67-MNH-12(C)(1)(b) states: "Inmates who have Parole Board hearings and score high or medium high risk to sexually reoffend shall be referred at the discretion of the Parole Board."

-7-

Case No. 1:17-CV-327
Gwin, J.

MNH-12(C)(1)(b) does establish that there is some group of inmates who are both sex offenders and not required to participate in the CSOP. But Defendants have not explained how either Plaintiff or the white inmate fit into the policy's classification scheme. The policy's plain language also does not explain when a prison administrator would or would not be able to remove a badly behaving inmate.

Second, Plaintiff alleges that when he asked Defendants why the white inmate was allowed to return to the CSOP even though he was not, they did not mention the substantive differences between the two men's statements.[38] Instead, Defendants relied on the fact that the white inmate's participation was mandatory, while Plaintiff's was not.[39] As previously discussed, Plaintiff plausibly alleges that this distinction between the two men does not actually exist. Therefore, the Court cannot say, based on the pleadings, that Plaintiff and the identified white inmate were not similarly situated.

### 2. Discriminatory Intent

Regarding discriminatory intent, "[i]t is incumbent on one asserting a Fourteenth Amendment equal protection claim to prove the existence of some purposeful discrimination."[40] "The [P]laintiff's subjective objections to the actions of the Defendants and his personal belief that they were motivated by racial prejudice is simply insufficient to support an Equal Protection claim."[41]

---

[38] Doc. 4-2 at 15-16.
[39] Plaintiff attached to his complaint copies of prison administrators' reports resolving his grievances placed into the prison administrative system regarding his removal from the CSOP. These reports support Plaintiff's version of Defendants' statements. *See, e.g.*, Doc. 29-2 at 3-4.
[40] *LaFountain v. Simasko*, 38 F.3d 1216, at *3 (6th Cir. 1994) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)).
[41] *Huddleston v. Bledsoe*, 2015 WL 1393217, at *4-5 (M.D. Tenn. Mar. 25, 2015), *adopted by*, 2015 WL 1879657 (M.D. Tenn. Apr. 23, 2015) (citing *Armour v. Gundy*, 107 F.3d 870 (6th Cir. 1997)).

-8-

Case No. 1:17-CV-327
Gwin, J.

Here, Plaintiff alleges more than a mere "personal belief" that Defendants' actions were motivated by race. Plaintiff alleges that his removal from the CSOP is a continuation of a pattern of racially discriminatory behavior by Defendant Whitten. He states that Defendant Whitten disproportionately issued disciplinary reports to African American inmates in the CSOP; allowed her staff to use racial slurs targeting African Americans and then justified their use of those slurs when inmates reported the staff; and disproportionately removed and terminated African American inmates from group treatment.[42]

Because the Court assumes that the allegations in Plaintiff's complaint are true, the Court holds that Plaintiff has adequately alleged an equal protection violation. Because Plaintiff's equal protection claim survives, so does his claim for conspiracy to violate his equal protection rights.[43]

*D. Defendants' Immunity Defenses*

Defendants assert claims of immunity under the Eleventh Amendment and under the doctrine of qualified immunity. At this stage of this case, these defenses fail.

Plaintiff sues Defendants in both their official and personal capacities. He seeks both monetary and injunctive relief.[44] Plaintiff can seek prospective or injunctive relief from Defendants in their official capacity pursuant to *Ex Parte Young*.[45] Plaintiff can also seek monetary relief from Defendants in their personal capacities.[46]

---

[42] Doc. 4-2 at 8, 16. *Cf. Robinson v. Runyon*, 149 F.3d 507, 512-13 (6th Cir. 1998) (collecting cases and holding that a past pattern of discriminatory behavior is relevant to proving an individual claim of discrimination); *Fletcher v. Chartrand*, 869 F.2d 1490, *1 (6th Cir. 1989) ("The pleadings and accompanying evidentiary material before us demonstrate, at most, one isolated incident of uneven enforcement of a prison disciplinary regulation. Absent more, no purposeful discrimination is apparent.").
[43] *See* 42 U.S.C. § 1985(3).
[44] Doc. 4-2 at 20.
[45] *See, e.g.*, *Verizon Maryland, Incorporated v. Public Service Commission,* 535 U.S. 635, 645 (2002).
[46] *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 29-30 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983.") (internal quotation marks omitted).

Case No. 1:17-CV-327
Gwin, J.

Additionally, Defendants are plainly not entitled to qualified immunity on Plaintiff's equal protection claim. Qualified immunity is only available when government officials do not violate clearly established law.[47] Prohibiting government officials from taking adverse actions against a person because of his race is at the very core of the Fourteenth Amendment.[48] That is exactly what Plaintiff alleges here.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's due process and First Amendment retaliation claims, and **DENIES** Defendants' motion to dismiss Plaintiff's equal protection claims.

IT IS SO ORDERED.

Dated: September 21, 2017   s/ *James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE

---

[47] See Pearson v. Callahan, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).
[48] See Rose v. Mitchell, 443 U.S. 545, 554 (1979) ("Discrimination on account of race was the primary evil at which the Amendments adopted after the War Between the States, including the Fourteenth Amendment, were aimed. The Equal Protection Clause was central to the Fourteenth Amendment's prohibition of discriminatory action by the State[.]").