UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                            :
RICARDO DODSON,                             :        CASE NO. 1:17-CV-327
                                            :
        Plaintiff,                          :
                                            :
vs.                                         :        OPINION & ORDER
                                            :        [Resolving Docs. No. 45, 51]
DAVID BERENSON, et al.,                     :
                                            :
        Defendant.                          :
                                            :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Ricardo Dodson, proceeding *pro se*, brings a 42 U.S.C. § 1983 claim for violations of his First, Sixth, and Fourteenth Amendment rights.[1] This Court previously dismissed all but Plaintiff's Fourteenth Amendment equal protection claim.[2] Defendants David Berenson and Jennifer Whitten move for summary judgment on this remaining claim.[3]

For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.

## I. Background

Plaintiff Dodson was previously incarcerated at the Grafton Correctional Institution ("Grafton").[4] At Grafton, Dodson was enrolled in the Comprehensive Sex Offender Treatment Program ("CSOP") there.[5] Defendant Berenson is the Director of Sex Offender Services for the

---

[1] *See* Doc. 4-2.
[2] Doc. 42.
[3] Doc. 45. Plaintiff opposes. Doc. 55. Defendants reply. Doc. 56. Plaintiff has previously sought a stay of these summary judgment proceedings. Doc. 51. The Court **DENIES** that request.
[4] Doc. 4-2 at 3. Plaintiff is currently incarcerated at the Richland Correctional Institution. *Id.*
[5] Doc. 45-1 at 1-2.

Ohio Department of Rehabilitation and Correction.[6] Defendant Whitten is a Sex Offender Program Administrator at Grafton.[7]

Plaintiff Dodson participated in CSOP group sessions.[8] Inmates began each session with a "check-in," where they said something about themselves.[9]

As his check-in for one session, Dodson told the other inmates in the session about an encounter he had with a female food service employee in the prison.[10] He stated that this food service employee told him that she looked up Dodson's conviction, and that she knew Dodson was convicted of rape.[11] She then told Dodson – and Dodson told his groupmates – that she was a sexual assault victim.[12]

At this point, Defendant Whitten, who led the group, made Plaintiff Dodson stop talking and moved on to another inmate's check-in.[13] Dodson claims that had he been able to finish the story, he would have said that after her initial statement, the food service worker confessed to him that she was not actually a sexual assault victim.[14] In fact, Dodson says the food service worker only wanted to see how a convicted rapist would respond to being confronted by a victim.[15]

After this session, Defendant Whitten removed Plaintiff Dodson from the CSOP group that he previously participated with.[16] She did not, and did not have the power to, remove him

---

[6] Doc. 45-4 at 1.
[7] Doc. 45-1 at 1.
[8] *Id.*
[9] Doc. 45-4 at 2.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] Doc. 55-2 at 2.
[15] *Id.*
[16] Doc. 45-1 at 3-4.

Case No. 1:17-CV-327
Gwin, J.

from the CSOP entirely.[17] She then spoke with Defendant Berenson about Plaintiff Dodson's actions.[18]

After meeting with Plaintiff Dodson, Defendants Whitten and Berenson entirely removed Dodson from the CSOP.[19] Defendant Berenson, however, told Dodson that Dodson could potentially re-enter the program if he wrote Defendant Berenson a letter about his desire to continue treatment.[20] To date, Dodson has not requested to re-enter the program.[21]

Later, Dodson learned that a white inmate was also punished for making an arguably similar statement in a CSOP group session.[22] This white inmate told the CSOP group that a female parole board member exposed her genitals to male prisoners in an attempt to cause them mental anguish.[23] Defendant Whitten removed this white inmate from that CSOP session.[24] But, after meeting with him, she allowed the white inmate to remain in the CSOP.[25]

Dodson argues that these differing outcomes occurred because he is African American and the other inmate is white.[26] He states that both he and the white inmate were referred to the CSOP by the parole board, in spite of Defendants' statements to the contrary.[27] Additionally, he argues that both men were disciplined for reporting sexually related misconduct by prison employees during a group session.[28]

---

[17] *Id.*
[18] *Id.*
[19] *Id.* at 2.
[20] *Id.*
[21] Doc. 45-4 at 2.
[22] Doc. 55-2 at 2.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 2-3.
[26] *Id.* at 2.
[27] *Id.* at 2-3.
[28] *Id.* at 2.

Defendants state that the substance of the two men's statements, as well as their reactions to the initial reprimand and past performance in the CSOP, explain the seemingly disparate punishments.[29] Defendants assert that Plaintiff Dodson's statement put the food service employee at risk in a way the white inmate's statement did not endanger the parole board member.[30]

They argue that Dodson's CSOP performance was worse than the white inmate.[31] They also say that Dodson refused to admit that his statement was improper or accept responsibility for his actions while the white inmate showed remorse.[32] Finally, Defendants say that their decision was motivated in part by the similarity between Dodson's actions in his story about the food service employee and the events that led to his imprisonment.[33]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[34] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[35]

Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[36] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[37]

---

[29] Doc. 45-1 at 3-4; Doc. 45-4 at 2-3.
[30] Doc. 45-1 at 3-4; Doc. 45-4 at 2-3.
[31] Doc. 45-1 at 3-4; Doc. 45-4 at 2-3.
[32] Doc. 45-1 at 3-4; Doc. 45-4 at 2-3.
[33] Doc. 45-1 at 3.
[34] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[35] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[36] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[37] *Id.* at 586.

Case No. 1:17-CV-327
Gwin, J.

The Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[38]

### III. Discussion

To make a claim under 42 U.S.C. § 1983, a plaintiff must show a deprivation of his constitutional rights committed under color of state law.[39] Plaintiff Dodson alleges that Defendants Berenson and Whitten violated his Fourteenth Amendment right to equal protection of the laws.[40]

*A. Exhaustion of Intra-Prison Grievance Procedures*

As a threshold issue, Defendants argue that Plaintiff Dodson did not exhaust the intra-prison grievance procedures prior to bringing this suit, in violation of the Prison Litigation Reform Act.[41] Specifically, they allege that Plaintiff Dodson did not file an informal complaint.[42]

Although Dodson may have failed to exhaust some of his previously dismissed claims, he properly exhausted his equal protection claim. Ohio Administrative Code 5120-9-31 details the inmate grievance procedure. 5120-9-31(K)(1) allows an inmate to skip filing an informal complaint when their grievance is raised under 5120-9-04, which deals with staff members taking discriminatory actions against inmates because of their race.

Dodson explicitly invoked this exemption when completing the remainder of the intra-prison grievance procedure.[43] His claim is therefore properly before this Court.

---

[38] *Killion*, 761 F.3d at 580 (internal citation omitted).
[39] *Barkovic v. Hogan*, 505 F. App'x 496, 499 (6th Cir. 2012).
[40] Doc. 55-1 at 1.
[41] 42 U.S.C. § 1997e(a).
[42] *See* Ohio Admin. Code 5120-9-31.
[43] *See* Doc. 55-3 at 20.

Case No. 1:17-CV-327
Gwin, J.

***B. Equal Protection Claims***

Defendants argue that Dodson was not similarly situated to the white inmate he compares himself to, and that even if he were, there is no evidence that they removed Dodson from the CSOP because of his race.

"The Equal Protection Clause prohibits discrimination by government which . . . targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."[44] In order to state an equal protection claim, a plaintiff must first prove disparate treatment, meaning that he was treated differently from someone similarly situated to himself.[45] Then, he must prove discriminatory intent, meaning that the Defendants' made their decision at least in part because they sought to discriminate based on a protected characteristic, *i.e.* race.[46]

Dodson has not presented sufficient evidence to survive summary judgment on either prong.

**1.** *Similarly Situated Analysis*

Dodson points to a white inmate in the CSOP as similarly situated to himself.[47] During a CSOP group session, this inmate stated that a female parole board member would expose herself to potential parolees before denying them parole in an effort to cause them mental distress.[48]

---

[44] *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011).
[45] *See Kennedy v. Tallio*, 20 F. App'x 269, 471 (6th Cir. 2001).
[46] *Id.*
[47] Doc. 55-2 at 2.
[48] *Id.*

-6-

Case No. 1:17-CV-327
Gwin, J.

Like Dodson, the white inmate was reprimanded for telling his story,[49] and had been referred to the CSOP by the parole board.[50] But, Defendants allowed this white inmate to continue in the CSOP.[51]

In spite of these facial similarities, there is no dispute of material fact as to whether Dodson and this white inmate were actually similarly situated. They were not.

As an initial matter, the substance of the two men's statements materially differed. Dodson's statement placed the female food service employee at risk because it exposed personal information about her to a group of sex offenders that would have the opportunity to interact with her. These offenders were all at a sufficiently high risk of reoffending that the Ohio Department of Rehabilitation and Correction placed them in the CSOP.[52] This is true regardless of whether the food service employee was actually a sexual assault victim. By contrast, the white inmate's statement involved a relatively anonymous parole board member that the group members would have minimal, if any, contact with.

Beyond this, uncontroverted affidavits from Defendants Whitten and Berenson show that Plaintiff Dodson and the white inmate had noticeably different reactions to their verbal reprimands. The white inmate accepted Defendants' contention that his group session story about the parole board member was inappropriate and expressed remorse for telling his story.[53]

---

[49] *Id.*
[50] *Id.*; *see also* Doc. 55-3 at 8 (stating that, to the best of her knowledge, the white inmate was also referred to the CSOP by the parole board).
[51] Doc. 55-2 at 2.
[52] *See* Ohio Dep't Rehab. & Correction Policy 67-MNH-12(VI)(B) (requiring CSOP participation from inmates who score as "high risk or medium-high risk to sexually reoffend" while requiring only "Basic Education programming" from lower risk inmates).
[53] Doc. 45-1 at 3-5, 8.

Dodson, however, refused to accept responsibility for his actions and did not express any understanding that his story about the food service employee was inappropriate.[54] Defendants found this especially troubling because Dodson's encounter with the food service employee had similarities to a past rape that he committed.[55]

Defendants also contend that Dodson was not otherwise performing well in the CSOP while the white inmate was.[56] Dodson responds that he was performing well, and provides evaluation records to support this argument.[57] These records show that while Dodson performed well in some parts of the CSOP, he was only average in other parts of the program.[58]

Ultimately, this minor factual dispute between the parties does not rise to the level of creating a genuine dispute of material fact about whether Plaintiff Dodson was similarly situated to this white inmate. He was not.

## 2. *Discriminatory Intent*

"It is incumbent on one asserting a Fourteenth Amendment equal protection claim to prove the existence of some purposeful discrimination."[59] "The [P]laintiff's subjective objections to the actions of the Defendants and his personal belief that they were motivated by racial prejudice is simply insufficient to support an Equal Protection claim."[60]

---

[54] *Id.*
[55] *Id.* at 3.
[56] Doc. 45-1 at 5 (declaration from Defendant Whitten). *Id.* at 6-12 (CSOP incident reports).
[57] Doc. 55-3 at 11-18.
[58] *See id.* (noting that Dodson received high scores for his behavior in CSOP sessions, but only average scores for his participation during those sessions).
[59] *LaFountain v. Simasko*, 38 F.3d 1216, at *3 (6th Cir. 1994) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)).
[60] *Huddleston v. Bledsoe*, 2015 WL 1393217, at *4-5 (M.D. Tenn. Mar. 25, 2015), *adopted by*, 2015 WL 1879657 (M.D. Tenn. Apr. 23, 2015) (citing *Armour v. Gundy*, 107 F.3d 870 (6th Cir. 1997)).

Case No. 1:17-CV-327
Gwin, J.

Dodson argues that Defendants Whitten and Berenson removed him from the CSOP because of his race. He provides no direct evidence from his interactions with either Defendant that suggests racial animus motivated their decision.

As circumstantial evidence of discriminatory intent, Dodson recounts a story of a different CSOP staff member using a racial slur against African Americans.[61] He says that Defendant Whitten approved of, or at least did not punish, this staff member's actions.[62] Defendant Whitten responds that the event involved a staff member repeating a racial slur used by an inmate in the process of telling the CSOP group that such language was inappropriate.[63]

Plaintiff Dodson also states that he has witnessed African Americans being disproportionately punished in the CSOP.[64] Finally, he argues that Defendants lied when they explained that the white inmate could stay in the CSOP because that inmate's participation was mandatory while Dodson's was not.[65]

Even taking Dodson's account of the staff member using a racial slur as true, none of these examples create a genuine issue of material fact regarding any discriminatory intent by Defendants. As an initial matter, none of Dodson's examples involve Defendant Berenson. Further, none of these examples are sufficiently connected to Dodson's dismissal from the CSOP to suggest that race played a role in Defendants' decision.

---

[61] Doc. 55-2 at 2.
[62] Doc. 55-2 at 2.
[63] Doc. 55-3 at 7.
[64] Doc. 55-2 at 3. Plaintiff Dodson also received documentation from the government about inmate dismissals from the CSOP over the last five years. *See* Doc. 58. These dismissals of other inmates are too attenuated to undermine Defendants' non-discriminatory justifications for Dodson's dismissal. *See, e.g.*, *Keene v. Mitchell*, 525 F.3d 461, 464 (6th Cir. 2008) (requiring that a party asserting an equal protection violation offer specific evidence from his own case to suggest that race played a part in the adverse decision against him).
[65] Doc. 55-2 at 3.

-9-

Case No. 1:17-CV-327
Gwin, J.

Dodson provides no documentation regarding punishment rates in the CSOP. Additionally, he provides zero examples of African Americans receiving differing punishment during any of that program's sessions. Dodson's one specific example of a racially tinged action, a staff member using a racial slur, was at worst a singular event that did not directly involve either Defendant.[66]

Finally, Defendants did mistakenly tell Dodson that the white inmate remained in the CSOP because his participation was mandatory, while the parole board referred Dodson to the CSOP and so Dodson's participation was not.[67] In her response to Dodson's discovery requests, however, Defendant Whitten states that the parole board referred both Dodson and the white inmate to the CSOP.[68] Therefore, Dodson's and the white inmate's mandatory or non-mandatory status in the CSOP would be the same. Defendants have not offered any explanation for why they misinformed Dodson.

Regardless of whether Defendants' statements about Dodson's and the white inmate's participation status were malicious or simply negligent, they do not create a genuine issue of material fact about whether Defendants acted with discriminatory intent. Defendants have offered numerous non-discriminatory reasons for Dodson's termination and these reasons are supported by the record. Dodson has not provided evidence to undercut them.

Defendants state that they terminated Dodson from the CSOP because they viewed Dodson's story as inappropriate for a CSOP group session, and because Dodson was unrepentant

---

[66] *Cf. Fletcher v. Chartrand*, 869 F.2d 1490 (Table), at *1 (6th Cir. 1989) (unpublished) ("The pleadings and accompanying evidentiary material before us demonstrate, at most, one isolated incident of uneven enforcement of a prison disciplinary regulation. Absent more, no purposeful discrimination is apparent.").
[67] *See* Doc. 55-3 at 24 ("Ms. Whitten also explained that it was not mandatory for you to be in the comprehensive sex offender program . . . . The other inmate that you were referring to is mandated to take the . . . program.").
[68] *Id.* at 8 (stating that, to the best of Defendant Whitten's knowledge, the white inmate was also referred to the CSOP by the parole board).

-10-

Case No. 1:17-CV-327
Gwin, J.

about his actions.[69] Defendants found Dodson's lack of remorse especially concerning because of the similarity between his story about the food service worker and the background of Dodson's rape conviction.[70] Finally, they did not believe that Dodson was performing well in the CSOP even before this event.[71]

Dodson's evidence does not rebut these explanations. The Court finds that there is no genuine dispute of material fact. Defendants are entitled to judgment as a matter of law because Dodson has not presented anyone similarly situated to himself and has failed to provide evidence of discriminatory intent.

Therefore, the Court **GRANTS** Defendants' motion for summary judgment.[72]

*C. Qualified Immunity*

Qualified immunity protects government officials from damages unless they violate a clearly established constitutional or statutory right.[73] When determining qualified immunity, the Court must determine whether a constitutional violation occurred, and if so, whether the violated constitutional right was clearly established at the time government officials acted.[74] Once a government official raises the defense of qualified immunity, "the plaintiff then bears the burden of showing facts that, if true, defeat the assertion of the doctrine."[75]

---

[69] *See* Doc. 56-1 at 2; Doc. 56-2 at 1-2.
[70] *See* Doc. 56-1 at 2; Doc. 56-2 at 2.
[71] *See* Doc. 45-1 at 5.
[72] Because the Court finds that no constitutional violation occurred, the Court also **GRANTS** Defendants' motion for summary judgment on Plaintiff's conspiracy claim.
[73] *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[74] *See France v. Lucas*, 836 F.3d 612, 625 (6th Cir. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).
[75] *Meyers v. City of Cincinnati*, 979 F.2d 1154, 1156 (6th Cir. 1992).

Case No. 1:17-CV-327
Gwin, J.

Here, had Plaintiff proven that Defendants intentionally punished him because of his race, that action would violate Plaintiff's clearly established constitutional right to equal protection of the laws.[76] But, Plaintiff Dodson has not proven that any intentional discrimination occurred.

At most, Plaintiff Dodson has provided evidence that Defendants prevented him from reporting a prison employee's misconduct to them,[77] and that they lied about one of the reasons underlying why they terminated him from the CSOP.[78]

These actions were not an equal protection violation. Even if these actions did somehow violate Dodson's constitutional rights, Dodson has provided no argument suggesting that the violated right was clearly established.

Therefore, the Court finds that Defendants are alternatively entitled to qualified immunity because no violation of a clearly established constitutional right occurred.

### *D. Dodson's Request for Additional Discovery*

In his opposition to summary judgment, Dodson requests additional discovery on race-related complaints against CSOP staff.[79] Dodson, however, has not shown good cause for this additional discovery.[80]

---

[76] *See, e.g.*, Rose v. Mitchell, 443 U.S. 545, 554 (1979) ("Discrimination on account of race was the primary evil at which the Amendments adopted after the War Between the States, including the Fourteenth Amendment, were aimed. The Equal Protection Clause was central to the Fourteenth Amendment's prohibition of discriminatory action by the State[.]").

[77] Notably, Plaintiff Dodson had the ability to tell his full story to other prison officials during the investigation of his complaints. *See, e.g.*, Doc. 55-3 at 25-26 (recounting to the Office of the Chief Inspector, in Plaintiff Dodson's own words, the events leading to his termination from the CSOP).

[78] As discussed above, Defendants offered numerous other non-discriminatory reasons for terminating Dodson from the CSOP.

[79] *See* Fed. R. Civ. P. 56(d).

[80] *See* Summers v. Leis, 386 F.3d 881, 887 (6th Cir. 2004) ("[A party] must state with 'some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment.'" (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed.Cir.1996))).

Case No. 1:17-CV-327
Gwin, J.

He alleges that there have been at least four other complaints regarding racial slurs used by CSOP staff, but he makes no argument that these complaints were against either Defendant Whitten or Defendant Berenson. Indeed, even if these complaints do exist, Dodson makes no attempt to connect them either temporally or substantively to his own dismissal from the program.

The Court therefore **DENIES** Dodson's request for further discovery.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: November 30, 2017                s/          *James S. Gwin*_____
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE